UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| OCÉ NORTH AMERICA, INC.<br>100 Oakville Drive, Trumbull, CT, 06611,<br><br>Plaintiff,<br><br>-against-<br><br>MCS SERVICES, INC.<br>9590 Lynn Buff Ct., Suite 11, Laurel, MD<br>20723 (Howard County),<br><br>BRIAN DEFAZIO,<br>1246 Aster Dr., Glen Burnie, MD 21061<br>(Anne Arundel County),<br><br>GEORGE ULMER, 25 N. Brookline Drive<br>Clementon, NJ 08021,<br><br>CHARLES HARDING, and<br>C/O MCS Services, Inc, 9590 Lynn Buff Ct.,<br>Suite 11, Laurel, MD 20723 (Howard<br>County),<br><br>LIONEL VERRETTE,<br><br>8081 Pendragon Way, Pasadena, MD 21122<br>(Anne Arundel County),<br><br>Defendants. | **COMPLAINT**<br><br>CASE NO. _____ |

Plaintiff Océ North America, Inc. ("Plaintiff" or "Océ"), by and through its

attorneys Kelley Drye & Warren LLP, as and for its Complaint against Defendants MCS

Services, Inc. ("MCS"), Brian DeFazio, George Ulmer, Charles Harding and Lionel Verrette

(collectively "Defendants"), alleges as follows:

**NATURE OF THE ACTION**

1.     Océ is one of a number of companies that design, manufacture, sell, and service high volume production printing systems ("PPS") for commercial use.  These units are sophisticated computerized printing systems that perform a wide range of commercial printing functions.  To properly service and maintain its PPS, Océ employs hundreds of technicians throughout the United States.  Océ has expended great time and expense to develop several service tool packages to assist technicians in the maintenance process.  These packages, which are in the form of software, are proprietary to Océ and restricted to internal use.

2.     MCS is in the business of servicing PPS manufactured by Océ and at least one other manufacturer.  MCS also sells used PPS of Océ and others.  The individual defendants are all senior executives or managers at MCS.  Defendants are engaged in a scheme to unfairly compete with Océ by:

(1)     obtaining through surreptitious means Océ's proprietary service tool software, and circumventing their built-in security features in order to allow MCS unauthorized access and use of the software to service Océ PPS;

(2)     obtaining through surreptitious means Océ's proprietary Technical Support Knowledge Database, and using it to service Océ PPS in competition with Océ;

(3)     circumventing the technological security features on used Océ PPS purchased on the secondary market to upgrade their performance features, instead of purchasing a license from Océ; and

2

(4)     selling toner for the PPS that is improperly labeled to mislead

customers into believing that the toner is a higher quality than it is

in fact.

3.      Océ seeks injunctive relief and damages for Defendants' misappropriation

of Océ's trade secrets, unfair competition, violations of the Lanham Act, 15 U.S.C. § 1125(a),

violations of the Computer Fraud and Abuse Act (the "CFAA"), 18 U.S.C. § 1030, violations of

the Digital Millennium Copyright Act (the "DMCA"), 17 U.S.C. § 1201, copyright infringement

in violation of the U.S. Copyright Act, 17 U.S.C. § 101, et seq., unjust enrichment, and

conversion.

## THE PARTIES

4.      Océ is a Delaware corporation with its principal place of business at

100 Oakville Drive, Trumbull, CT, 06611.  Océ's Production Printing Systems Division is

located in Boca Raton, Florida.

5.      Upon information and belief, MCS is a Maryland company that has been

and continues to do business in the State of Maryland, with a principal place of business at

9590 Lynn Buff Ct., Suite 11, Laurel, MD, 20723.

6.      Upon information and belief, DeFazio is an individual residing in

Maryland who is the President of MCS.

7.      Upon information and belief, Ulmer is an individual residing in New

Jersey who is a Director of Field Service at MCS.

8.      Upon information and belief, Harding is an individual residing in

California who is a Manager of Field Service at MCS.

9.      Upon information and belief, Verrette is an individual residing in Maryland who is a Manager of National Technical Support at MCS.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question under the CFAA, the U.S. Copyright Act, and the Lanham Act) and 28 U.S.C. 1332(a)(1) (diversity).  The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11.     Venue is proper in this District, in accordance with 28 U.S.C. §§ 1391(a) and (b), because MCS resides herein.

## FACTS COMMON TO ALL CLAIMS

### The Business of Océ

12.     Océ is the North American subsidiary of a global information and document management technology company named Océ N.V. ("Océ N.V."), headquartered in the Netherlands.  The majority of the shares of Océ N.V. was recently purchased by Canon, Inc., a global printing corporation.  While Océ's North American headquarters are located in Trumbull, Connecticut, Océ also maintains a sizeable office presence in Boca Raton, Florida, and Chicago, Illinois.

13.     Océ enables its customers to manage their documents efficiently and effectively by offering innovative print and document management products and services for professional environments.  Océ provides business solutions based upon Océ's advanced software applications that deliver documents and data over internal networks and the internet to printing devices and archives.  Supporting the workflow solutions are Océ's digital printers and scanners, considered to be the most reliable and productive in the world.  Océ also offers a wide range of display graphics, consulting and outsourcing solutions.

4

14.     Océ offers a variety of products and services within its three main business units.  Océ Production Printing Systems markets high-volume printers, such as production printers, cutsheet printers and continuous feed printers.  Océ Document Printing Systems markets a full line of printers, copiers, and scanners for daily office use, both stand-alone and for network applications.  Océ Wide Format Printing Systems markets printers and scanners for large-sized documents, such as technical drawings and maps and display graphics applications such as advertising banners and billboards.

## Océ's Production Printing Systems Division

15.     The conduct at issue involves Océ's Production Printing Systems Division.  Océ manufactures and sells complex production printing systems ("PPS") for use in commercial printing applications.  These computerized printing systems cost from $100,000 to well over a million dollars, depending on model and features.

16.     Océ PPS are capable of producing up to 1,300 images per minutes and are designed to meet most commercial printing applications.  These PPS are used for a variety of functions, from printing books on demand, to printing statements, prospectuses and policies by financial service and insurance companies, to printing marketing materials such as catalogues, coupons or solicitations.  Many Océ PPS also have the ability to use specialized toner, known as "MICR", which is a magnetized ink most commonly applied to checks.  Océ integrated MICR printers can be used in printing payroll checks, insurance reimbursements and balance transfer solicitations.

17.     In addition to sales of Océ PPS, a large component of Océ's business consists of service contracts with customers to maintain and service Océ equipment.  Given the high-volume and commercial uses of Océ PPS, it is important for customers to have proper and

5

regular maintenance of their Océ equipment.  Océ employs hundreds of technicians, known as

Field Engineers or "FEs", throughout the United States to service customer needs.

**Defendants' Improper Use of Océ's Proprietary**
**Diagnostic Software**

        18.     Defendant MCS competes with Océ and others to maintain, repair, and

provide supplies for PPS that have been purchased from Océ.

        19.     To assist in diagnosing and correcting PPS service issues, Océ Field

Engineers use proprietary service tool packages that contain diagnostic software. These packages

are kept in electronic form on Océ-issued laptops used by Océ Field Engineers.  The laptops are

connected to the Océ PPS at a customer's site and used to diagnose actual or potential problems

with these sophisticated computerized printers.  The service tool packages also include a Parts

Manual which assists the Field Engineer in determining the proper replacement parts when a

problem is detected.  The packages also include a Maintenance Manual which gives the Field

Engineer step-by-step guidance in how to replace the specific parts at issue.  In other words, the

service tool packages provide a Field Engineer with complete information by Océ on how to

diagnose and repair problems with Océ PPS.

        20.     Océ has two versions of its diagnostic software.  One version is known as

the "LPMW" software, which works with several types of Océ printers, such as Demandstream,

Pagestream and some of Océ's current top of the line Variostream printers.  Another version of

Océ's diagnostic software is known as "CODI" and works with the most sophisticated versions

of Océ's Variostream printers.  Both the LPMW and CODI software were developed by Océ

N.V. at great cost and expense.

21.     Océ takes steps to protect the proprietary nature of its service tool packages to ensure that they are not obtained by competitors.  Distribution of the package is limited to Océ Field Engineers who are required to sign confidentiality agreements.  The software is itself labeled "Confidential" and/or "for internal use only" or "may not be given to third parties."  Also, versions of the software are encrypted and the software is set to automatically expire after a year's time.

22.     Océ PPS cannot be properly maintained without Océ's service tool packages.  The systems require complex and minute adjustments that are made via diagnostic software and cannot be fully serviced manually in an adequate manner.

23.     MCS's primary line of business is to compete with Océ for contracts to provide maintenance services for Océ PPS.  Like Océ, MCS has a number of field engineers throughout the country.  A number of MCS field engineers were formerly Field Engineers for Océ.

24.     MCS has acknowledged that Océ's service tool packages are proprietary to Océ.  In several limited instances, MCS has sought licenses from Océ to use versions of the service tool packages.

25.     MCS is improperly using Océ's proprietary and copyrighted LPMW service tool packages without Océ's permission.  MCS has improperly obtained these packages and, upon information and belief, DeFazio, Ulmer, Harding, Verette, and other MCS executives and managers have distributed them to MCS field engineers, who are using unauthorized copies of the LPMW service tools in their daily work.  Upon information and belief, one or more former Océ employees who now work for MCS (including Ulmer) copied the LPMW software and provided it to MCS, in violation of the terms of their employment.

26.     Defendants have also taken steps to circumvent the encryption of the LPMW software.  Versions of the LPMW software that MCS has obtained are designed to expire at the end of one year.  For example, if the software is set to expire on March 31, 2010, it is programmed not to function beyond that date.  To circumvent these technological security measures, Defendants instruct MCS field engineers to manipulate their laptops to back-date the internal clocks.  By fooling the computer in this way, Defendants prevent the internal date of the laptop from passing March 31, 2010, which would otherwise cause the automatic disabling of the software.

27.     Having circumvented Océ's security measures, MCS field engineers have been and are unlawfully using Océ's proprietary LPMW diagnostic software, Parts Catalog and Maintenance Manual in their day-to-day business.

**Defendants' Improper Use of Océ's Proprietary**
**Technical Support Knowledge Database**

28.     Defendants have also improperly obtained a copy of Océ's proprietary Technical Support Knowledge Base database.  This database contains proprietary information concerning how Océ Field Engineers have addressed and fixed service and maintenance issues.  Each time an Océ Field Engineer or technician fixes a new issue with an Océ PPS that was not previously encountered, the diagnosis and remedy are inputted into that database.  The database contains years of Océ institutional maintenance knowledge, which is an invaluable tool to guide Field Engineers and other Océ technicians as they encounter similar problems in the future.

29.     This Database is of obvious value to a competitor of Océ.  If a competitor's field engineer is unable to fix a particular problem, the database can supply the answer.  Rather than invest the time and money to create its own database of experience, MCS has stolen Océ's database.

30.     Océ protects the confidentiality of this proprietary database.  The database is itself marked as "Confidential".  It is maintained on a secure Océ intranet which is password protected, accessible only to those in the company who need to have access.  Océ Field Engineers are required to sign a Confidentiality Agreement to maintain the confidentiality of proprietary information such as that database.

31.     Defendants have obtained a copy of the Technical Support Knowledge Base database through surreptitious means.  Defendants have distributed the database to various MCS employees who have been using it in analyzing and addressing service issues.

**Defendants' Improper Manipulation of Océ PPS**
**to Evade Paying License Fees to Océ**

32.     When Océ PPS are sold, the customer can select different degrees of functionality, such as print speed or memory, for different prices.  For example, while an Océ system as manufactured has the ability to print a certain maximum number of images per minute, a customer may choose a less expensive license that only enables the printer to function at less than its maximum image-per-minute capability.  A customer may choose this more limited license since its business does not require the maximum printing speed and the customer therefore prefers not to pay the higher amount to license that feature.

33.     The specific features and level of functionality selected and paid for by a customer are enabled by the controller unit within the PPS, which contains certain copyrightable software.  The controller is the computerized portion of the PPS that directs all mechanical printing.  The controller, in turn, is told which functionalities to enable by use of what is known as an "SRA key."  The SRA key is a computer text file containing an encrypted string of alphanumeric characters along with a description of the features that it authorizes.  The key is

programmed to work only in a unit with a specific serial number and controller type.  The key

for one unit will not work in another unit.

34.     The SRA key for a particular unit is generated by one of a limited number

of authorized Océ employees, by using a specially designed software application on a secure Océ

intranet site.

35.     An Océ customer is only authorized to use an Océ PPS in accordance with

the level of functionality it has purchased from Océ via the corresponding license fee.  If a

customer wishes to obtain additional functionality for a machine (*i.e.*, more speed or memory),

the customer may purchase a new license from Océ for an additional fee.  In exchange for

payment of a higher license fee, Océ will provide a new SRA key that will enable the additional

functions.

36.     Defendants have circumvented and continue to improperly circumvent the

technological measures that limit access to computer software contained within the Océ PPS in

order to enable them to perform functions beyond those authorized in the original licenses

lawfully purchased by Océ customers.  By so doing, Defendants avoid compensating Océ for

such enhanced functions.

37.     MCS has purchased used Océ PPS on the secondary market with the intent

to re-sell that equipment.  Those PPS each come with its original SRA key, which enables a

specific set of functionalities.  If MCS desires to lawfully enhance the functionality of a

particular printer, it would need to obtain a new license and SRA key from Océ.  However,

Defendants have unlawfully tampered with a number of such PPS by reprogramming them to

accept an SRA key from another used machine, for which the original owner purchased a license

with enhanced functionality.

38.     As described above, each SRA key is designed to work only with the serial number of the PPS for which it was intended to be used.  Accordingly, if MCS entered an SRA key from another printer into a printer that it was refurbishing, the SRA key would not work with that refurbished printer, *i.e.*, the controller would not recognize it so the machine would not function.  To evade that computer encryption, Defendants tamper with the programming of the controller in the PPS that it is refurbishing to allow that controller to recognize the SRA from a different machine.

39.     By improperly circumventing the technology measures that Océ put in place to control access to software and the corresponding functionality of its PPS, Defendants have enhanced the functionality of at least nineteen (19) Océ PPS units, without paying Océ license fees for that enhanced functionality.  MCS is then able to charge more money for the enhanced unit when it resells it on the secondary market.  By its unlawful acts MCS has deprived Océ of over a million dollars of license revenues.

40.     MCS has acknowledged that SRA keys are proprietary to Océ.  On several occasions, MCS has sought licenses from Océ to purchase new SRA keys to enhance the functionality of printers it is refurbishing or servicing.

**MCS's Improper Competition with Océ
In Its Sale of Toner**

41.     Océ and other PPS use toner to print images.  There are several different types of toner that work with Océ printers.  These toners are classified by the amount of "dots per inch" or "dpi" in a printed image.  More sophisticated toners have finer particle size which enables more dots per inch to be printed.  Toner with 600 dpi creates smaller and crisper images and shades of gray in black and white printing.  Toner with 600 dpi is a very high grade toner

that is used in Océ's top-of-the-line Varistream units; 300 dpi toner is typically used with other Océ printers.

42.     MCS competes with Océ to sell toner for use in Océ printers.   Océ PPS use plastic containers to hold toner which containers are specially designed to fit into respective model  Océ PPS.  Upon information and belief, MCS collects used Océ containers, refills them with toner and re-sells them.

43.     On its website, MCS states that it sells "Océ compatible toner" that is "of the highest quality" and "second to none."

44.     Some containers sold by MCS are labeled as containing toner with 600 dpi.  According to results of tests conducted for Océ by an independent source on a sample of that toner,  the toner is actually 300 dpi, not 600 dpi.

45.     The use of mislabeled toner in Océ printers has had and will have a significant and negative impact on Océ.  Customers who purchase mislabeled toner will mistakenly believe it to be 600 dpi quality and will be disappointed with the printed images.  Such customers will conclude that the fault is due to poor performance of Océ's PPS  rather than the lesser quality of the toner used.  The sale of PPS is highly competitive, with a number of other major companies selling equipment in competition with Océ.  A customer's wrongful negative perception of Océ equipment harms Océ, its reputation and Océ's future sales efforts.

**FIRST CLAIM FOR RELIEF**
**(MISAPPROPRIATION OF TRADE SECRETS)**

46.     Plaintiff incorporates paragraphs 1 through 45 as though set forth fully herein.

47.     Both the encrypted and non-encrypted versions of Océ's LPMW service tool packages are trade secrets because Océ derives independent economic value from the

LPMW software not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. Océ has taken reasonable efforts under the circumstances to maintain the secrecy of these items.

48.     Océ's Technical Support Knowledge Base is a trade secret because Océ derives independent economic value from the Technical Support Knowledge Base not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. Océ has taken reasonable efforts under the circumstances to maintain the secrecy of these items.

49.     The Océ LPMW service tool package and the Technical Support Knowledge Base each contains valuable information concerning the maintenance and repair of Océ PPS.

50.     Oce' N.V. and Océ have expended considerable time, money and effort compiling all the information contained in the service tool packages and Technical Support Knowledge Base.

51.     Use of these proprietary programs allows Océ to provide more efficient and effective service to its customers, thereby giving Océ a competitive advantage over other companies that service Océ equipment, such as MCS, which have not developed similar tools.

52.     Defendants acquired the LPMW service tool packages and the Technical Support Knowledge Base through improper means including, but not limited to, inducing Océ employees to breach their confidentiality obligations to Océ.

53.     Defendants have provided the Océ LPMW service tool package and the Technical Support Knowledge Base to its employees without Océ's permission. MCS employees are using these tools to service and maintain Océ printers.

54.     As a result of Defendants' willful and wanton actions, Océ has been and continues to be irreparably harmed and so is entitled to injunctive relief, as it cannot be made whole solely by remedies at law.

55.     As a result of Defendants' willful and wanton actions related to Océ's trade secrets, Océ has also suffered damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
## (VIOLATION OF THE COMPUTER
## FRAUD AND ABUSE ACT)

56.     Plaintiff incorporates paragraphs 1 through 55 as though set forth fully herein.

57.     The actions of Defendants violate the Computer Fraud and Abuse Act (the "CFAA").  MCS accessed or caused to be accessed Océ's protected LPMW and Technical Support Database service tool software by intentionally accessing a computer protected under the CFAA, without authorization, or by intentionally exceeding the authorized access, in violation of the CFAA.

58.     Defendants' conduct involved interstate commerce in that the software was, upon information and belief,  transported across state lines when it was initially stolen from Océ, there were numerous inter-state communications regarding the software, and the software was transported across state lines to be used at the sites of MCS customers.

59.     Defendants obtained information from Océ's protected software for the purpose of commercial advantage or private financial gain.

60.     As a result of the foregoing conduct, Océ has suffered impairment to the integrity or availability of its data, programs, systems, and information resulting in losses or damages in excess of $5,000 during a one year period.

61.     Océ cannot be made whole by remedies at law; it is also entitled to injunctive relief barring all such unauthorized access.

### THIRD CLAIM FOR RELIEF
### (VIOLATIONS OF THE DIGITAL
### MILLENNIUM COPYRIGHT ACT)

62.     Plaintiff incorporates paragraphs 1 through 61 as though set forth fully herein.

63.     Océ PPS contain technological measures that in the ordinary course of the measures' operation require the application of information, or a process or a treatment, with Océ authority, to gain access to the proprietary software.

64.     An SRA key that is assigned to a particular printer identified by a specific serial number protects access to the copyrightable software necessary to access certain functionalities of an Océ PPS.  That software is subject to protection under the Copyright Act. The SRA key is a technological measure that, in the ordinary course of its operation, controls access to that software.  Normally the customer selects which functionalities it wants at the price offered for each.

65.     Océ did not give MCS authority to unlock, or otherwise to avoid, bypass, remove, disable, deactivate, or impair the technological measures for effectively controlling access to and operation of the Océ software that enables printer functions.

66.     Defendants circumvented Océ PPS SRA keys for the purpose of gaining unauthorized access to software which allows the PPS to perform enhanced functions in order to resell the altered PPS for a greater profit.

67.     Océ's LPMW service tool package and Technical Support Knowledge Base is each protected by technological measures that in the ordinary course of the measures'

operation require the application of information, or a process or a treatment, with Océ's

authority, to gain access to the proprietary and copyrighted software.

68.     Océ did not give Defendants authority to unlock, or otherwise to avoid,

bypass, remove, disable, deactivate, or impair the technological measures for effectively

controlling access to and operation of Océ diagnostic software and the Technical Support

Knowledge Base.

69.     MCS technicians who were not authorized by Océ to access or use Océ

proprietary service tool packages and the Technical Support Knowledge Base have routinely

acted to unlock, or otherwise to avoid, bypass, remove, disable, deactivate, or impair the

technological measures controlling access to the service tool packages and Database.

70.     Defendants circumvented technological measures protecting Océ

copyrighted service tool packages and the Technical Support Knowledge Base for the purpose of

obtaining profits by winning contracts to provide printer maintenance and servicing to Océ

customers.

71.     As a result of MCS's willful and wanton actions, Océ also has suffered

damages within the meaning of 17 U.S.C. § 1203(c)(3)(A).

## FOURTH CLAIM FOR RELIEF
## (COPYRIGHT INFRINGEMENT OF SOFTWARE)

72.     Plaintiff incorporates paragraphs 1 through 71 as though set forth fully

herein.

73.     Océ's LPMW diagnostic software is subject to U.S. Copyright

Registration (Nos. TXu 1-631-921 and TXu 1-632-935) owned by Océ's affiliate company, Océ

Printing Systems GmbH.  Océ is the exclusive licensee of all rights in and to the copyrights in

the software in the United States.  Copies of the registration certificates are attached as Exhibit B

to the Declaration of Ron Trickel, dated April 15, 2010.

74. Defendants, with full knowledge of Océ's rights, willfully infringed Océ's

copyrighted software by reproducing and distributing exact copies of Océ's software, which is

also substantially similar to and is copied and derived from the copyrightable elements of the

software, in violation of Plaintiff's rights under the Copyright Act.

75. Upon information and belief, Defendants copied the software intentionally

and despite notice of Plaintiff's copyrights for the specific purpose of infringing Plaintiff's

copyrights.

76.  By reason of Defendants' intentional and willful copyright infringement

of the software, including the creation and distribution of exact copies of the software, Plaintiff

has been and will continue to be irreparably harmed unless Defendants are permanently enjoined

from their unlawful conduct.

77. Plaintiff has been damaged by Defendants' acts in an amount not yet

known, but believed to be in excess of $1 million.

78. Plaintiff is further entitled to recover from Defendants the gains, profits

and advantages Defendants have obtained as a result of its acts of copyright infringement in an

amount not yet known but to be determined at trial.

79. Plaintiff has no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**
**(UNJUST ENRICHMENT)**

80. Plaintiff incorporates paragraphs 1 through 79 as though set forth fully

herein.

81.    Defendants have obtained significant financial benefits through MCS's resale of altered Océ PPS and unauthorized use of Océ proprietary diagnostic and maintenance tools.

82.    Defendants acquired these benefits voluntarily and with full knowledge.

83.    Defendants have retained significant financial benefits under circumstances that make it unjust and inequitable for Defendants to retain those benefits without paying Océ the value of the benefits Defendants' acquired.

84.    Océ is entitled to recover the significant financial benefits that MCS has obtained through its willful and wanton conduct in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
## (CONVERSION)

85.    Plaintiff incorporates paragraphs 1 through 84 as though set forth fully herein.

86.    Defendants intentionally exerted acts of ownership and dominion over Océ's software that are inconsistent with Océ's rights.

87.    As a result of Defendants' willful and wanton actions related to Océ's proprietary diagnostic and maintenance tools and Defendants' circumvention of Océ product security features,  Océ also has suffered damages in an amount to be determined at trial.

88.    Océ has also been and continues to be irreparably harmed and so is entitled to injunctive relief as it cannot be made whole solely by remedies at law.

## SEVENTH CLAIM FOR RELIEF
## (UNFAIR COMPETITION)

89.    Plaintiff incorporates paragraphs 1 through 88 as though set forth fully herein.

90.     MCS and Océ share a common customer base, as only a limited number of large companies require PPS equipment, maintenance, and toner.

91.     MCS has engaged in a pattern of fraudulent and deceptive conduct related to the sale of toner for Océ PPS, including but not limited to, deceptively labeling the toner MCS sells to improperly compete with Océ toner and misrepresenting to customers that MCS is capable of servicing all functionalities of Océ PPS printers, when in reality its ability to do so is dependent upon pilfered Océ software and misappropriating Océ proprietary tools for PPS servicing.

92.     There is a likelihood that owners of Océ PPS will be confused by the labeling on MCS' toner containers.  MCS's wrongful actions have given it an unfair competitive advantage to which it is not otherwise entitled and violate principles of common honesty and fairness.

93.     As a result of MCS's willful and wanton actions, Océ also has suffered damages in an amount to be determined at trial.

94.     As a result of MCS's willful and wanton actions, Océ has been and continues to be irreparably harmed and is entitled to injunctive relief as it cannot be made whole solely by remedies at law.

## EIGHTH CLAIM FOR RELIEF
## (VIOLATION OF THE LANHAM ACT)

95.     Plaintiff incorporates paragraphs 1 through 94 as though set forth fully herein.

96.     MCS's conduct violates the Lanham Act.  MCS markets and sells toner for use in Océ PPS, the containers for which bear false or misleading statements of fact concerning toner quality and suitability for use in Océ PPS.  In particular, MCS is selling toner

that is formulated to perform at 300 dpi in containers with labels stating that the toner is 600 dpi. MCS knew or should have known that its labels were mislabeled and contained false or misleading statements of fact, which deceived or had the capacity to deceive potential customers.

97.     Statements about dpi on a product label are likely to influence a reasonable customer's purchasing decisions, as a higher dpi toner results in a better quality print job.

98.     In commercial promotion of its product, MCS is misrepresenting the characteristics and qualities of its toner.

99.     MCS has made sales of this toner through interstate commerce to owners of Océ PPS throughout the United States.

100.    As a result of MCS's willful and wanton actions, Océ also has suffered damages in an amount to be determined at trial.

101.    As a result of MCS's willful and wanton actions, Océ has been and continues to be irreparably harmed and is entitled to injunctive relief as it cannot be made whole solely by remedies at law.

## JURY DEMAND

Océ demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Océ respectfully requests that the Court enter judgment in its favor and grant it the following relief:

A.     an order requiring Defendants to return to Océ all copies of any of Océ's software or databases that are not the subject of a valid and continuing license;

B.      a permanent injunction prohibiting Defendants from continuing to use Océ's

protected trade secrets, software, and databases without a valid license;

C.      compensatory damages in an amount to be determined at trial, plus interest, costs,

fees and disbursements;

D.      its reasonable costs and attorneys' fees;

E.      punitive damages; and

F.      any other and further relief which the Court may deem just and proper.


Dated:    April 20, 2010                    KELLEY DRYE & WARREN LLP


                                            By:    *s/Ira T. Kasdan*
                                                Ira T. Kasdan, Bar # 26942
                                                3050 K Street, NW
                                                Suite 400
                                                Washington, D.C. 20007
                                                (202) 342-8400
                                                (202) 342-8451 (FAX)
                                                ikasdan@kelleydrye.com

                                                Jonathan K. Cooperman
                                                Richard E. Donovan
                                                Nicole M. Hudak
                                                (Pro Hac Vice Applications Pending)
                                                101 Park Avenue
                                                New York, New York 10178
                                                (212) 808-7800
                                                (212) 808-7897 (FAX)
                                                jcooperman@kelleydrye.com
                                                rdonovan@kelleydrye.com
                                                nhudak@kelleydrye.com

                                                *Attorneys for Plaintiff*
                                                *Océ North America, Inc.*