**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

OCÉ NORTH AMERICA, INC.  *
         *
         *
    v.      *   Civil Action WMN-10-CV-984
         *
MCS SERVICES, INC. et al.  *

 *  *  *  *  *  *  *  *  *  *  *  *

**MEMORANDUM**

   Before the Court is Defendants MCS Services, Inc., Brian DeFazio, George Ulmer, and Lionel Verrette's Motion to Dismiss.[1] Paper 41. The motion has been fully briefed. Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that the Motion to Dismiss will be granted in part and denied in part as set forth below.

**I.  BACKGROUND**

   Plaintiff's Complaint alleges the following facts. Plaintiff Océ North America, Inc. (Océ) designs, manufactures, sells, and services high volume production printing systems (PPS) for commercial printing functions. To properly service and maintain Océ systems, it employs Field Engineers throughout the United States. According to Plaintiff, it has also

---

[1] Charles Harding, also named as a Defendant, also participated in this motion, but he was voluntarily dismissed by Plaintiff on July 14, 2010. Paper No. 51.

developed proprietary service tool packages for use by the Field

Engineers to better service the systems, which include

diagnostic software, a parts manual, and a maintenance manual.

The service tool packages provide Océ Field Engineers with

complete information on how to diagnose and repair problems with

Océ PPS.

Plaintiff has developed two different diagnostic software

programs.  One is the LPMW (Laser Printer Maintenance-W)

software, which works with several types of Océ printers,

including those that operate using an internal software package

known as "Bundle 5" software.  The other Océ diagnostic software

program is known as "CODI" (COnfiguration and DIagnostics),

which works with printers that operate using the more

sophisticated "Bundle 7" internal software package.  The Bundle

5 and 7 software each consist of several component software

programs that work together to make the different functions of

the PPS printer operate according to instructions from the user.

Plaintiff claims that it developed the Bundle 5 and 7 software

and the LPMW and CODI diagnostic software at great cost and

expense.

According to Plaintiff, it limits distribution of the

service tool packages to its Field Engineers who sign

confidentiality agreements, it labels the software in various

ways to indicate its confidentiality, and it encrypts the software and sets it to automatically expire after a year. Plaintiff also claims that its PPS printers cannot be properly maintained without its service tool packages.

Defendant MCS is a competitor of Plaintiff in the business of servicing PPS printers manufactured by Plaintiff. MCS also sells used and refurbished Océ PPS printers and toner for use in Océ PPS printers. Defendant George Ulmer is a former employee of Plaintiff who is now working for MCS as a Director of Field Services. The remaining Defendants, Brian Defazio and Lionel Verrette, are President and Manager of National Technical Support, respectively, of MCS.

Plaintiff alleges that Defendants obtained the LPMW service tool packages via former Océ employees, including Defendant Ulmer, who copied the LPMW software while working for Plaintiff and provided it to MCS in violation of their terms of employment. After obtaining the LPMW service tool packages, Plaintiff claims that Defendants distributed them to its engineers who are using these copies in their daily work without permission from Plaintiff. Plaintiff also claims that Defendants have taken steps to circumvent the encryption of the LPMW software. In addition, Plaintiff alleges that Defendants have "down-leveled" a number of PPS printers by removing the Bundle 7

internal software and replacing it with less sophisticated Bundle 5 software so that it can maintain the printers with the LPMW service tool package rather than the CODI package.

Plaintiff entered a License Agreement with MCS to provide MCS with the right for two specifically named engineers to use the CODI service tool package on two designated laptops to service three designated printers owned by Farmers Insurance in California. Plaintiff alleges that MCS violated the terms of that License Agreement by distributing the CODI service tool package to a number of other MCS field engineers and using it on other PPS printers without permission. In addition, Plaintiff alleges that, as with the LPMW diagnostic software tools, Defendants took steps to circumvent the encryption of the CODI diagnostic software tools.

Finally, Plaintiff claims that when it sells PPS printers, the customer can select different degrees of functionality, such as print speed or memory, for different prices.[2] The features and level of functionality is controlled by software contained in a controller unit within the PPS printer. The various features and functionalities may be changed on the controller by the use of an SRA key, which is a computer text file containing

_____

[2] Plaintiff also alleges facts in its Complaint regarding the improper use of its Technical Support Knowledge Base, and the sale of toner. Those facts are not pertinent to this motion to dismiss, however.

an encrypted string of alphanumeric characters along with a description of the features that it authorizes.  The key is programmed to work only in a unit with a specific serial number and controller type and will not work in another unit.  Should a customer wish to increase the functionality of its PPS printer, it can pay a higher license fee and Plaintiff will provide a new SRA key enabling the additional functions.  Plaintiff alleges that Defendants purchased used Océ PPS printers, circumvented the technological measures, and upgraded the functionality of the used printers without paying the license fees for the additional functionality.  According to Plaintiff, Defendants then sold the refurbished and upgraded PPS printers on the secondary market.

Plaintiff's Complaint raises nine claims for relief: 1) Misappropriation of Trade Secrets; 2) Violation of the Computer Fraud and Abuse Act; 3) Violations of the Digital Millennium Copyright Act; 4) Copyright Infringement of Software; 5) Breach of License Agreement; 6) Unjust Enrichment; 7) Conversion; 8) Unfair Competition; and 9) Violation of the Lanham Act. Defendants bring this motion to dismiss as to Claim 2 for failure to state a claim under the Computer Fraud and Abuse Act, and as to Claims 5, 6, and 7, arguing that they are preempted by the federal Copyright Act.  Defendants also move to strike a

portion of claim 8 that it also claims is preempted by the federal Copyright Act.

## II.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, . . . , to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).  "Detailed factual allegations" are not required, but allegations must be more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action[.]"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). "[O]nce a claim has been stated adequately," however, "it may be supported by showing any set of facts consistent with the allegations in the complaint."  Twombly, 550 U.S. at 563.  In considering such a motion, the court is required to accept as true all well-pled allegations in the complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff.  Ibarra v. United States, 120 F.3d

472, 474 (4th Cir. 1997) (citing <u>Little v. Federal Bureau of</u> <u>Investigation</u>, 1 F.3d 255, 256 (4th Cir. 1993)).

**III. DISCUSSION**

**A. Count 2: Violation of the Computer Fraud and Abuse Act**

Defendants' first argument is that Plaintiff has failed to state a claim for violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030.  Plaintiff cites to two sections of the CFAA that it alleges provide a cause of action against Defendants.  The first, 18 U.S.C. § 1030(a)(4), provides a federal cause of action against a person who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value. . ."  The second, 18 U.S.C. § 1030(a)(5)(C) provides a cause of action against a person who "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss."

Defendants contend that Plaintiff has "failed to allege facts to meet the required element that a defendant's use of [Plaintiff's] software was 'without authorization.'"  Defs. Memo. at 5.  As to Defendant Ulmer, Defendants contend that while he may have misused or misappropriated the information

7

given to him prior to his leaving his employment with Océ by using it in his job with MCS, he was authorized to access the information and so his use was not "without authorization" as defined under the CFAA. As to MCS, Defendants contend that it had a license to use the CODI diagnostic software and so while there may have been a breach of the licensing agreement, here again, its use beyond the licensing agreement was not "without authorization" as defined under the CFAA. Finally, Defendants allege that the remaining Defendants (and MCS) were also not using Plaintiff's software "without authorization" as defined under the CFAA because the ex-employees who gave them the software were authorized and because they did not access Plaintiff's computers.

Defendants raise three cases that are particularly on point. In Orbit One Communications, Inc. v. Numerex Corporation, the defendant alleged that the plaintiffs, three of the defendant's former executives, took the company's electronic proprietary information prior to their departure from the company in order to compete with it. 692 F. Supp. 2d 373, 384 (S.D.N.Y. 2010). The Southern District of New York held that because the executives had "unfettered access" to the defendant's computer system while employed by the defendant, their accessing the computer system was not "without

authorization" nor did it "exceed their authorized access in
violation of the CFAA." Id. at 385.  After analyzing the
language of the statute and noting other courts' analysis of the
legislative history of the CFAA, the court held that the CFAA
specifically prohibits "access of a computer without
authorization, not an employee's misuse of information that he
or she was entitled to access or obtain."  Id.

    This Court has taken a similar stance in International
Association of Machinists and Aerospace Workers v. Werner-
Masuda, 390 F. Supp. 2d 479 (D. Md. 2005).  In Werner-Masuda,
the defendant was a member of the International Association of
Machinists and Aerospace Workers (IAM), an international labor
organization, and the Secretary-Treasurer of the local Lodge.
Id. at 483.  As Secretary-Treasurer, the defendant had
authorized access to a secure, proprietary website, which was
lodged on IAM's server in Maryland from which she could access
IAM's confidential membership list.  Id.  The IAM alleged that
the plaintiff used the membership list to attempt to organize a
rival union.  Id.  IAM argued that, because the defendant had
signed an agreement that she would not access the website for a
purpose "contrary to the policies and procedures of the IAM
Constitution," she had accessed the website without
authorization or in excess of her authorization.  Id. at 498.

The Court reasoned that, as a matter of law, however, simply because the plaintiff had breached the agreement by using the information for a contrary purpose, it did not follow that she was not authorized to access the information or that she did so in excess of her authorization in violation of the CFAA. Id. The Court noted that the CFAA does not prohibit the unauthorized disclosure of information or authorized access for unauthorized or illegitimate purposes. Id. at 499. Thus, because she was authorized to access the website and information located there she was not in violation of the CFAA. Id.

The third case raised by Defendants is Role Models America, Inc. v. Jones, 305 F. Supp. 2d 564 (D. Md. 2004). In Role Models, the plaintiff alleged that the principal of its school used proprietary information to complete an Internet-based doctoral program offered by Nova Southeastern University (NSU). Id. at 565. The Court held that because NSU did not itself access the information on the plaintiff's computers, but only received such information from the principal, it did not violate the CFAA. Id. at 566-67. The plaintiff raised the theory that when the principal placed its proprietary information on his personal computer, it became a clone of the plaintiff's computers and thus access to the principal's computer was tantamount to unauthorized access of the plaintiff's computers.

Id. at 567.  This Court disagreed.  Id.  First, the Court noted
that, even under this theory, the plaintiff did not allege that
NSU accessed the plaintiff's computer, but rather that it had
simply received information, which is not a violation of the
CFAA.  Id.  Second, the court held that, even if NSU had
actively retrieved or "accessed" the information from the
principal's computer, rather than passively receiving it from
the principal, it was the principal's computer and it was his
authorization that was relevant.  Id.  As the plaintiff did not
allege that the principal denied NSU access to his computer, NSU
had not committed a violation of the CFAA.  Id.  The court
concluded that "whether [the plaintiff] would have given NSU the
same authorization to access its own computers is irrelevant."
Id.

     Here, Plaintiff has not alleged that Defendant Ulmer
accessed any of Plaintiff's computers without authorization
while employed by Plaintiff in order to obtain the diagnostic
software.  In fact, it was part of his job to use Plaintiff's
computers and the software on the computers.  As in Orbit and
Warner-Mesuda, the fact that he copied the software on to his
own laptop may have been a violation of his employment
agreement, but that does not constitute a violation of the CFAA.

As to MCS and the other Defendants, Plaintiff has not alleged that they accessed any "protected computer" without authorization or in excess of that authorization to obtain Plaintiff's software. Plaintiff correctly cites to Theofel v. Farey-Jones for the proposition that it does not need to own the "protected computer" in order to claim damages for a violation of the CFAA, as "[t]he civil remedy extends to '[a]ny person who suffers damage or loss by reason of a violation of this section.'" 359 F.3d 1066, 1078 (9th Cir. 2004) (emphasis in original). Theofel does not vitiate, however, the need for the access to the computers to be unauthorized by whoever controlled such access. Here, Plaintiff alleges that its software was accessed on laptops and printers.[3] Nowhere in its Complaint does it allege, however, that the owners of the laptops and printers, or other person with the requisite authority, denied access such that Defendants' access was unauthorized or in excess of its authorization. In fact, most of the laptops and printers alleged to have been accessed belonged to MCS or its employees. Thus, as in Orbit, Warner-Mesuda, and Role Models, Plaintiff has not demonstrated that Defendants' access of the laptops or printers was unauthorized, and there is no CFAA violation regardless if Plaintiff permitted them to use its software.

---

[3] Plaintiff has argued, and Defendant has not disputed, that "protected computers" covers the laptops and PPS printers at issue here.

Plaintiff argues in its opposition that some of the computers accessed by MCS are owned by its sister company, Océ Financial Services, Inc., and are leased to MCS's customers. As this fact was not alleged in Plaintiff's complaint, it cannot be considered on this motion to dismiss, as the Court only considers facts alleged in the Complaint. See Young v. AT&T Mobility, LLC, Civ. No. 09-2292, 2010 WL 2573982, *2 n.1 (D. Md. 2010). Regardless, such an allegation would not be sufficient to correct the deficiencies in Plaintiff's pleading, because it leaves open the questions of who had the right to prohibit access to those computers and how accessing those computers without authorization would cause damage to Plaintiff as opposed to its sister company.

Defendants' second argument that Plaintiff has failed to allege sufficient facts to state a CFAA claim is that Plaintiff has not sufficiently pleaded the $5000 minimum damages required to make a CFAA claim. "A civil action for a violation of [the CFAA] may be brought only if the conduct involves" one of five factors, which includes "loss to one or more persons during any one year period . . . aggregating to at least $5,000 in value." 18 U.S.C. § 1030(g) (referring to the five factors found at subsection (c)(4)(A)(i)). The CFAA under § 1030(e)(11) defines "loss" as:

any reasonable cost to any victim, including

(i)     The cost of responding to an offense,

(ii)    Conducting a damage assessment,

(iii)   Restoring the data, program, system, or
        information to its condition prior to the
        offense, and

(iv)    Any revenue lost, cost incurred, or other
        consequential damages incurred because of the
        interruption of service[.]

Defendants contend, and the Court agrees, that Plaintiff's allegation that it "has suffered impairment to the integrity or availability of its data, programs, systems, and information resulting in losses or damages in excess of $5000 during a one year period" is merely a conclusory statement and thus does not sufficiently plead the $5000 minimum damages requirement to bring suit under the CFAA. See e.g., Civic Center Motors, Ltd. v. Mason Street Import Cars, Ltd., 387 F. Supp. 2d 378 (S.D.N.Y. 2005) (dismissing CFAA claim under Rule 12(b)(6) where the plaintiff's loss allegations did not meet any of the four loss categories under § 1030(e)(11); ReMedPar, Inc. v. AllParts Med., LLC, 683 F. Supp. 2d 605 (M.D. Tenn. 2010) (same). In its response, Plaintiff does not clarify how the allegations in its Complaint fall under any of the four loss categories as delineated under § 1030(e)(11). It argues, however, that it has expended more than $5000 in connection with its experts'

investigation of Defendants' conduct of this matter.[4]  While Plaintiff's statement may be true, it has not pleaded these losses and, as already discussed, they may not be considered on this motion to dismiss.  Thus, Plaintiff has failed to adequately plead the $5000 loss requirement and the CFAA claim will be dismissed.

Plaintiff has requested that the court allow it to amend the Complaint as to the $5000 loss requirement.  The Court acknowledges that Plaintiff's additional allegations as to loss may be sufficient to meet that requirement.  Amending the Complaint as to this issue, however, would be futile as Plaintiff has not demonstrated that it can overcome the failure to allege that Defendants' access to the protected computers at issue was unauthorized.  Thus, Plaintiff's request is denied.

---

[4] Plaintiff attached a copy of its expert declaration as evidence of the costs spent on investigating Defendants' conduct thus far.  As this is a motion to dismiss, however, the question is only whether Plaintiff has alleged sufficient facts to state a claim and not whether it has evidence to support them.  Subject to certain exceptions not applicable here, the Court does not consider evidence outside the Complaint on a motion to dismiss. Rush v. American Home Mortgage, Inc., Civ. No. 07-0854, 2009 WL 4728971, *3 (D. Md. 2009).  While Defendants insist that Plaintiff's action converts this motion to one for summary judgment, there is no indication that was Plaintiff's intention and the Court declines to interpret Plaintiff's action as such.

**B.   PREEMPTION OF COUNTS 5, 6, & 7 BY COPYRIGHT ACT**

Defendants argue that Plaintiff's claims five, breach of license agreement; six, unjust enrichment; and seven, conversion; should be dismissed because they are preempted by federal copyright law.  The Copyright Act provides:

> All legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyrights . . . are governed exclusively by this title.  [After January 1, 1978], no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).

To determine whether a state claim is preempted by the Copyright Act, the Court must apply a two-prong test: 1) "the work must be within the scope of the 'subject-matter of copyright' as specified in 17 U.S.C. §§ 102, 103;" and 2) the state law rights must be equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106.  U.S. ex rel. Berge v. Board of Trustees of the Univ. of Alabama, 104 F.3d 1453, 1463 (4th Cir. 1997) (internal citations omitted).  If there is an "extra element that changes the nature of the state law action so that it is qualitatively different from a copyright infringement claim," there is no preemption. Id. (internal quotation omitted) (emphasis in original).  Under 17 U.S.C. § 106, "[t]he owner of a copyright has the exclusive right to 1) reproduce the work, 2) prepare derivative works

based on the work, 3) distribute copies of the work, 4) perform the work publicly, and 5) display the work publicly." <u>Trandes Corp. v. Guy F. Atikinson Co.</u>, 996 F.2d 655, 659 (4th Cir. 1993).

Plaintiff argues that dismissing claims on the basis of preemption is premature at this stage as Defendants have not yet answered the Amended Complaint and conceded that all the materials covered by the License Agreement are copyrighted or even copyrightable. Thus, they contend that they should be able to plead counts five, six, and seven in the alternative pursuant to Rule 8 of the Federal Rules of Civil Procedure. Plaintiff overstates its ability to plead in the alternative, however. This Court has previously granted motions to dismiss claims preempted by the federal Copyright Act. See <u>e.g.</u>, <u>Nichols Agency, Inc. v. Enchanted Child Care, Inc.</u>, 537 F. Supp. 2d 774, 782-84 (D. Md. 2008) (dismissing breach of contract claim as preempted by federal Copyright Act); <u>Wharton v. Columbia Pictures Indus., Inc.</u>, 907 F. Supp. 144, 145-46 (D. Md. 1995) (dismissing various state law claims and converting them to a copyright infringement claim due to preemption). As noted by the District of Connecticut, "The relevant question is whether Plaintiffs <u>could</u> bring their claims under copyright law at all, not whether they will nor even whether they will ultimately prevail on their copyright claim." <u>Moser Pilon Nelson</u>

Architects, LLC v. HNTB Corp., Civ. No. 05-0422, 2006 WL
2331013, *11 (D. Conn. 2006) (emphasis in original); See also
Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d at 658 (holding
that failing to meet a jurisdictional prerequisite for bringing
a copyright infringement claim "does not affect the broad
preemptive scope of § 301").  The protection afforded to
Plaintiff at this stage is provided in the standard of proof and
in the notice pleading requirement.  Patriot Homes, Inc. v.
Forest River Housing, Inc.  489 F. Supp. 2d 865, 869 (N.D. Ind.
2007).

### 1.    Count 5: Breach of Contract

Plaintiff claims that MCS violated the License Agreement by
copying and distributing the CODI diagnostic software and
service tools to MCS Field Engineers other than the two
designated and by using it to service and maintain other
printers besides those designated in the agreement.

The first question is whether the CODI diagnostic software
and service tools at issue within the breach of contract claim
are within the scope of the copyright protections.  Defendants
simply state, without explanation, that the software, which is
the subject of the License Agreement, is copyrightable.
Plaintiff does not dispute this statement except to respond that
Defendants have not conceded that its software and service tools
are subject to the Copyright Act.  Software is subject to the

Copyright Act.  See Trandes Corp., 996 F.2d at 659 (holding that computer programs are within 'subject matter' of copyright); M. Kramer Mfg. Co. v. Andrews, 783 F.2d 421, 434-35 (4th Cir. 1986) (computer programs are copyrightable).

The next issue is whether the breach of contract claim as it relates to the CODI diagnostic software and service tools is equivalent to a federal copyright infringement claim.  On its face, Plaintiff's claim falls within the exclusive rights of a copyright owner to reproduce, distribute, and perform their work and is thus preempted by the federal Copyright Act.  Plaintiff attempts to distinguish its claim, however, by claiming that the License Agreement created "private law" between the Parties, which it contends creates the "extra element" such that its breach of contract claim is "qualitatively different" from a copyright infringement claim.  Plaintiff primarily relies on Lowry's Reports v. Legg Mason, Inc., 271 F. Supp. 2d 737 (D. Md. 2003), for this proposition.  In Lowry's Reports, a defendant subscribed to a financial report published by the plaintiff and allegedly agreed as part of a subscription agreement not to disseminate the information contained in the reports to others, including associates, branch offices, or affiliates, without consent by the plaintiff.  Id. at 756.  The court concluded that the agreement contained "unique terms" that, if proved, would "establish[] a private law governing fair use of the copyrighted

works <u>inter</u> <u>partes</u>" making "the claim qualitatively different from a simple copyright case, in which there is no 'private law' defining what is and is not fair use." <u>Id.</u> at 756-57.  Unlike <u>Lowry's Reports</u>, Plaintiff's Complaint contains no allegation that the License Agreement contained a provision whereby Defendants promised not to use the CODI software and service tools beyond the limited scope of the License Agreement. Rather, according to Plaintiff's Complaint, the License Agreement simply granted two MCS technicians permission to have the CODI software and servicing tools on two designated laptops for use in diagnosing problems with three specific printers.  In exchange, MCS agreed to pay for that permission.

In order to address this problem, Plaintiff argues that the License Agreement also contains an acknowledgment that the materials licensed are confidential and that MCS will not disclose the confidential information to others outside the two named technicians.  As this allegation was not included in Plaintiff's Complaint, however, the Court will not consider it on this motion to dismiss.[5]  Because the new allegation appears

---

[5] Although Plaintiff attached the copy of the License Agreement to its Opposition, the Court does not consider it here.  Because Plaintiff did not attach the License Agreement to its Complaint nor did Defendant attach it to its Motion to Dismiss, to consider the entire License Agreement in this situation, the Court would have to convert the motion to dismiss into a motion for summary judgment.  <u>See</u> <u>Mezu v. Morgan State University</u>, 264 F. Supp. 2d 292, 295 (D. Md. 2003).  Although Defendant

to create an extra element, however, making the claim

qualitatively different from a simple copyright case, and

Defendants have not disputed this contention, the Court will

grant Plaintiff's request to amend the Complaint to include this

allegation.  The Court notes, however, that the portion of the

License Agreement to which it refers relates only to

"Documentation and firmware updates" and it is not clear that it

relates to the CODI software itself.  Thus, amending the

complaint may not have any bearing on Plaintiff's breach of

contract claim relating to the misuse of the CODI software.

Plaintiff also argues that the requirement in its License

Agreement that Defendants pay an annual license fee to use

Plaintiff's "Service Document" and "Service Tools" manuals and

"firmware updates" provides the "extra element" needed to make

its breach of contract claim qualitatively different from a

copyright infringement claim.[6]  Pl. Opp'n at 20.  In making this

---

advocated for such a conversion, the Court declines to do so.
Conversion was not the intent of Plaintiff who operated under
the erroneous belief that the License Agreement could be
attached and used to allege additional facts not in the
Complaint in an opposition to the motion to dismiss.  Pl. Opp.
at 13 n.3.  Moreover, were the motion to be converted, it would
be denied as Defendants failed to demonstrate the absence of a
genuine dispute of material fact as required by Federal Rule
56(c), but instead argued as if it was a motion to dismiss for
failing to plead the allegation in its Complaint.

[6]Here again, Plaintiff did not include this allegation in its
Complaint.  As the Court determines that it would not add an
extra element to overcome preemption, however, the Court

argument, Plaintiff cites to <u>Acorn Structures, Inc. v. Swantz</u>,
846 F.2d 923 (4th Cir. 1988) and <u>Madison River Management Co. v.</u>
<u>Business Management Software Corp.</u>, 387 F. Supp. 2d 521
(M.D.N.C. 2005). In <u>Acorn Structures</u>, the plaintiff provided
the defendant with a set of house plans "as a prospective
customer of an Acorn house package." 846 F.2d at 926. While
the defendant did not have to commit to purchase a house
package, the court found implied in the agreement that if the
defendant decided to use the plans it would either purchase the
plans or purchase his building materials from the plaintiff.
<u>Id.</u> The court found that the breach of this implied agreement
did not arise out of the subject of copyright and was therefore
a separate and distinct cause of action. <u>Id.</u>

In <u>Madison River</u>, the plaintiff alleged that the defendant
had used the plaintiff's database in excess of the licenses
purchased. 387 F. Supp. 2d at 541. The court found that an
express promise to pay for excess use in the Agreement provided
the extra element needed to prevent preemption by the Copyright
Act. <u>Id.</u>

Here, the provision of the contract to which Plaintiff
refers is simply discussing payment for those items for which
Defendants are authorized to use the software and materials. It

declines to allow Plaintiff to amend its Complaint to add this
allegation.

does not discuss payments related to use of the software and materials beyond the limited scope of the License Agreement as in Acorn Structures and Madison River.  Thus, the payment provision does not provide the "extra element" making Plaintiff's breach of contract claim qualitatively different than a violation of the Copyright Act – for copying, distributing, and using Plaintiff's copyrightable materials without Plaintiff's permission.

Instead, this case is more like Nichols Agency, Inc. v. Enchanted Child Care, Inc., 537 F. Supp. 2d 774, 776 (D. Md. 2008), in which the breach of contract stemmed from a provision that "[a]fter termination of this agreement, [the defendant] shall have no further right to use, reproduce, distribute, display or modify any Agency Works" without Nichols's consent and agreement to do so.  The Court found that such a provision did not provide the kinds of "implicit provisions or private law" as found in Lowry's Reports or Acorn Structures.  Id. at 784.  Therefore, the Court will dismiss Plaintiff's breach of contract claim as to the CODI software and service tools, but will allow Plaintiff to amend its claim to plead the breach of the confidentiality provision of the License Agreement.

### 2.    Count 6: Unjust Enrichment and Count 7: Conversion

Plaintiff's unjust enrichment claim applies to Defendants' alleged "resale of altered Océ PPS and unauthorized use of Océ

proprietary diagnostic and maintenance tools." Complaint ¶ 93.
The Court understands the proprietary diagnostic and maintenance
tools to be software and information, which, as discussed with
the breach of contract claim, is subject to the federal
Copyright Act. Because Plaintiff's claim for unjust enrichment
as to the diagnostic and maintenance tools focuses solely on
Defendants' unauthorized use, it is no different than a
copyright infringement claim. See e.g., Costar Group Inc. v.
Loopnet, Inc., 164 F. Supp. 2d 688, 714 (D. Md. 2001) (holding
that plaintiff's claim of unjust enrichment was preempted by the
Copyright Act because it was just "a disguised copyright
claim"). Plaintiff seems to concede as much in that its
opposition to Defendants' motion regarding the unjust enrichment
claim discusses only the resale of the altered PPS printers and
not the diagnostic and maintenance tools. Thus, the unjust
enrichment claim as to the "proprietary diagnostic and
maintenance tools" will be dismissed.

Defendants are less successful in explaining how
Plaintiff's claim for unjust enrichment regarding the resale of
altered Océ PPS is preempted. They simply make a blanket
statement that it involves accessing software on the printers
and, therefore, that it is the same as a copyright infringement
claim. The PPS printers are more than just software, however,
and Defendants do not explain how this difference does not make

24

the unjust enrichment claim qualitatively different than a simple copyright infringement claim. Thus, Defendants' motion to dismiss Plaintiff's unjust enrichment claim as to the PPS printers will be denied.

Plaintiff's conversion claim relates only to "acts of ownership and dominion over Océ's software that are inconsistent with Océ's rights." Complaint ¶ 98. This allegation is nothing more than a copyright infringement claim and will be dismissed.

## C.   Motion to Strike Portions of Complaint

Defendants' final argument is that paragraph 103 of claim 8 of the Amended Complaint for unfair competition should be struck under Federal Rule 12(f) because it is immaterial or impertinent. Paragraph 103 of the Amended Complaint alleges that MCS has engaged in unfair competition in its sales of toner and by "misrepresenting to customers that MCS is capable of servicing all functionalities of Océ PPS printers, when in reality its ability to do so is dependent upon pilfered Océ software and misappropriating Océ proprietary tools for PPS servicing." Defendants contend that this last allegation is preempted by federal copyright law since it involves an accusation that Defendants infringed Plaintiff's copyright. Plaintiff does not oppose Defendants' argument except to state that it should be allowed to make the claim in the alternative, which the Court has already discussed. Thus, Defendants' motion

to strike the phrase in paragraph 103 relating to the use of Océ software will be granted.  The portion of paragraph 103 relating to toner sales, however, will not be stricken.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion will be granted in part and denied in part.  A separate order will issue.

_____/s/_____

William M. Nickerson
Senior United States District Judge
September 16, 2010