```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
```

OCÉ NORTH AMERICA, INC.          *
                                 *
        v.                       *   Civil Action WMN-10-0984
                                 *
MCS SERVICES, INC. et al.        *

       *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM

Pending before the Court is Plaintiff Océ North America, Inc.'s Motion to Compel Production of Forensic Images of Certain "Flash" or "Thumb Drives." ECF No. 94. The parties have fully briefed the motion. Upon a review of the pleadings and applicable case law, the Court determines that the motion to compel will be granted as set forth below.

## I.   BACKGROUND

Plaintiff Océ North America, Inc. (Océ) and Defendant MCS Services, Inc. (MCS) are both engaged in the business of servicing high speed printers. In this lawsuit, Océ claims that MCS used without permission proprietary software Océ developed to service certain printers, and Océ's Complaint includes seven causes of action against MCS and certain MCS employees, including: misappropriation of trade secrets; violations of the Digital Millennium Copyright Act; copyright infringement of software; breach of license agreement; unjust enrichment; unfair competition; and violations of the Lanham Act.

At issue in this motion to compel are forensic images of several "thumb" or "flash" drives allegedly containing Océ proprietary software once used by MCS. Contemporaneously with its Complaint, Océ filed a motion for a preliminary injunction. Prior to the hearing on the preliminary injunction, the parties engaged in expedited discovery, during which Océ served on MCS a Notice of Inspection (Notice) pursuant to Federal Rule of Civil Procedure 34. The Notice sought the production of any relevant "device for the storage of data, including without limitation a flash drive, memory stick, or thumb drive." Mot., Ex. 1, Ex. D at 1-2, ECF No. 94-5.

Shortly thereafter, MCS made available at MCS's office roughly twenty-two laptop computers and fifteen thumb drives responsive to Océ's Notice. Océ in turn dispatched its expert, Jonathan D. Bobb, to MCS's office to forensically image the devices. Bobb spent three days at MCS's office working alongside MCS's own expert and was able to image the hard disk drives of twenty-one laptop computers. On the afternoon of the third day, Friday, May 21, 2010, Bobb sought to image the thumb drives, but he was informed by MCS personnel that MCS was closing its office and that he would not be permitted to continue his work. MCS then objected to any further imaging by Océ's expert, and Océ was never permitted to image the thumb drives.

Consequently, Océ filed a motion to compel the production of the thumb drives, but MCS opposed it by arguing that Océ had already exceeded the scope of discovery to which it was entitled under the Court Order then in effect authorizing expedited discovery, and that further forensic imagining of the thumb drives was unnecessary prior to the preliminary injunction hearing. This Court denied Océ's motion, stating that "[a]lthough [the thumb drives are] ultimately discoverable, such discovery is not necessary on an expedited basis to prepare for a preliminary injunction hearing." Order of June 22, 2010, at 4, ECF No. 43.

On the second day of the preliminary injunction hearing, the parties entered into a Stipulated Preliminary Injunction (Stipulated Injunction). The Stipulated Injunction provided that a neutral third-party expert, Capsicum Group LLC (Capsicum), would take possession of and forensically image the relevant thumb drives, then destroy the thumb drives thereby securing all Océ intellectual property contained on them. To that end, the parties also agreed to a protocol (Protocol) outlining the manner in which Capsicum would carry out its tasks. The Protocol provided: "Capsicum will create a backup of the image files for redundancy purposes. The image files will be retained by Capsicum and will not be provided to counsel or

the parties unless pursuant to the parties' agreement or subsequent court order." Def.'s Opp'n 5, ECF No. 97.

Pursuant to the Stipulated Injunction and Protocol, Capsicum imaged the thumb drives and then destroyed them. Only the forensic copies of the thumb drives remain. Océ now seeks access to those images and queried MCS for its approval prior to engaging the Court, but MCS objected. Océ then filed this motion. In opposition, MCS argues that: (1) Océ has failed to comply with Local Rule 104.8 governing the litigation of motions to compel discovery; (2) Océ never formally requested the thumb drive images at issue because only the thumb drives—and not the identical images of the thumb drives—existed when Océ served its Notice and production requests; and (3) the Stipulated Injunction evidenced an agreement by the parties to forego expensive forensic expert discovery, and Océ has not presented any reason to vitiate that agreement.

## II. **DISTRICT OF MARYLAND LOCAL RULE 104.8**

MCS first argues that Océ has failed to follow the proper procedure for litigating a motion to compel set forth in Local Rule 104.8 (Rule). The Rule establishes a procedure and requirements for motions to compel in discovery disputes, all of which are intended to enhance the parties' capacity to resolve their differences without the intervention of the Court. While the Rule prescribes a procedure not followed by Océ, the Rule

4

does "not govern motions to compel . . . production . . . where no responses at all [to the request for production] have been served." L.R. 104.8.

In this case, it appears that MCS failed to serve on Océ a response to Océ's Notice sufficient to conform to Federal Rule of Civil Procedure 34 and Local Rule 104.8, but the record before the Court is unclear. Upon receipt of Océ's Notice, MCS initially acquiesced to the production of the thumb drives, stating in an email to Océ's counsel on May 10, 2010, that "[a]ll 15 memory sticks are [in MCS's office] and you can review those as well." Mot., Ex. 1, Ex. E at 40, ECF No. 94-6. Thus, "[a]t the time of [Bobb's] inspection, MCS voluntarily made available to [Bobb] . . . fifteen thumb drives." Def.'s Opp'n 3. MCS only objected to producing the thumb drives after Bobb was unable to image the drives during the three-day inspection at MCS's offices, and it never served on Océ an independent document stating with particularity its objections to Océ's Notice. Rather, MCS lodged its objections via email and later in a letter filed with the Court opposing Océ's first motion to compel production of the drives.

To the extent Rule 104.8 attempts to encourage parties to resolve discovery disputes without Court intervention, Océ has substantially performed its obligations to avoid filing a motion to compel. Before proceeding with the instant motion, Océ

5

queried MCS's counsel regarding any MCS objection to Océ obtaining the flash drive images from Capsicum. MCS refused to consent. Given MCS's earlier opposition to production of the flash drives, further efforts to resolve this dispute outside the Court were unnecessary. Moreover, were the Court to liberally construe MCS's email objections and opposition to Océ's first motion to compel as a proper response to Océ's Notice, Océ would merely be required to issue another Rule 34 request for the production of the thumb drives. In turn, MCS would lodge another objection, and Océ would file another motion to compel. As the parties' positions are entrenched, the Court need not countenance further delay in the resolution of this ongoing issue. Océ properly filed this motion with the Court.

### III. OCÉ'S NOTICE OF INSPECTION

The second of MCS's procedural arguments in opposition to this motion involves the sufficiency of Océ's Notice of Inspection. The Notice, served prior to the preliminary injunction hearing, was drafted before Capsicum imaged and destroyed the thumb drives. Thus, MCS claims the Notice contemplated only the thumb drives and not the thumb drive images Océ now seeks because the images were not in existence at the time the Notice was drafted.

Parties have a continuing obligation to supplement their responses to discovery requests. Fed. R. Civ. P. 26(e). Océ's

6

Notice requested the thumb drives and other like devices.  As forensic images of the thumb drives, the Capsicum-created copies contain the exact same information the drives contained.  The images are responsive to Océ's Notice and within MCS's control because MCS has the authority to release the images to Océ.  Océ is thus entitled to receive the images.

MCS's argument also fails for practical reasons.  Oftentimes, the nature of discovery of electronically stored information (ESI) is such that the producing party first creates forensic images of potentially responsive material, then reviews the electronic files on those images for relevancy and privilege before producing a filtered trove of responsive files.  In such cases, the producing party produces identical copies of the files, but not necessarily the original files themselves.  Similarly, a party may print hardcopies of electronic files or create facsimiles of responsive documents.  None of these reproductions technically exist at the outset of litigation, but they must be produced and are sufficient to satisfy a producing party's obligations pursuant to a document request.

The instant scenario is not substantially different.  When Océ requested the thumb drives, it sought not the physical device but rather the ESI contained therein.  As a matter of practical concern, therefore, if the original thumb drives were discoverable, Capsicum's forensic images of the thumb drives

must also be discoverable, and Océ need not propound a new discovery request for what amounts to the exact same information.

## IV. DISCOVERABILITY

As MCS's procedural challenges to the motion must fail, the remaining issue is whether the thumb drives are otherwise discoverable pursuant to Océ's Notice. To be discoverable, information must be relevant to any party's claim or defense, though it need not be admissible at trial. Fed. R. Civ. P. 26(b)(1). Courts broadly construe relevancy within the context of discovery to encompass any matter that bears or may bear on any issue that is or may be in the case. Kidwiler v. Progressive Paloverde Ins. Co., 192 F.R.D. 193, 199 (N.D.W. Va. 2000) (citing Oppenheimer Fund Inc. v. Sanders, 437 U.S. 340, 350 (1978)). Nevertheless, discovery has "ultimate and necessary boundaries," Hickman v. Taylor, 329 U.S. 495, 507 (1947), and indeed Rule 26 provides some such boundaries. For example, a court may limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit, considering . . . the parties' resources." Fed. R. Civ. P. 26(b)(2)(C)(iii).

The information contained on the thumb drives weighs directly on the extent of MCS's alleged use of Océ's intellectual property. MCS does not dispute the relevancy of

8

the drives and, as the Court has previously stated, the drives are discoverable.  MCS, however, claims that the parties agreed in their Stipulated Injunction and Protocol to limit the scope of electronic discovery by engaging a neutral, third-party expert, and by restricting access to the thumb drive images absent compelling circumstances.  The purpose of the neutral expert, MCS argues, was to avoid the necessity of dueling expert witnesses and the attendant expense.  Thus, MCS submits that ordering the production of the thumb drive images would defeat the parties' discovery-related agreements.

Océ predictably denies that the Stipulated Injunction and Protocol were meant to limit discovery.  Rather, Océ claims that Capsicum was asked to destroy the thumb drives to protect Océ's intellectual property consistent when the Stipulated Injunction, and that Capsicum imaged the drives to preserve whatever evidence the drives contained.  In addition, Océ argues the Protocol's condition restricting access to the images absent the parties' mutual agreement or court order is consistent with ordinary principles of discovery.

Aside from their word, the parties have presented no convincing evidence supporting their respective interpretations of the purpose of the Stipulated Injunction and Protocol.  More importantly, neither the Stipulated Injunction nor the Protocol explicitly limits discovery or indicates an intention to do so,

and the Protocol specifically contemplates distributing the thumb drive images to the parties upon a court order. In view of the truth-seeking interests advanced by broad discovery, the Court will not constrain access to the thumb drives absent a clear indication the parties intended to limit their rights to relevant electronically stored information.

Underlying MCS's opposition is a complaint regarding the expense of expert forensic ESI analysis and the disparity between Océ's considerable financial leverage and MCS's comparatively limited resources. It seems likely that MCS's earlier refusal to grant Océ's expert a fourth day to image the thumb drives before the preliminary injunction hearing was animated at least in part by MCS's aversion to additional expert-related expenses. Such experts are indeed expensive. But the financial harm allegedly caused to Océ is also considerable, and while Océ's annual revenues far outstrip those of MCS, MCS, with nearly fifteen million dollars in revenue last year, is no small outfit. Given the importance of the thumb drives to this case, the Court finds no compelling reason to deny Océ access to information central to this lawsuit.

**IV. CONCLUSION**

For the foregoing reasons, Océ's motion to compel production of certain thumb drive images will be granted. A separate order will issue.

/s/<br>William M. Nickerson<br>Senior United States District Judge

January 20, 2011